[839 NE2d 357, 805 NYS2d 299]

JOSE RODRIGUES et al., Plaintiffs, v N & S BUILDING CONTRACTORS, INC., Defendant and Third-Party Plaintiff-Appellant, et al., Defendant. CALDAS CONCRETE COMPANY, INC., et al., Third-Party Defendants-Respondents.

Argued September 14, 2005; decided October 20, 2005

## POINTS OF COUNSEL

*Goldberg Segalla LLP,* Albany (*Matthew S. Lerner* and *Gary J. O'Donnell* of counsel), for defendant and third-party plaintiff-appellant. I. An oral contract or a contract implied in fact applied to the work site, and the safety agreement that included the applicable indemnification provision was part of that contract. (*Matter of Ahern v South Buffalo Ry. Co.,* 303 NY 545; *Dzek v Desco Vitroglaze of Schenectady,* 285 AD2d 926; *Jemzura v Jemzura,* 36 NY2d 496; *Hooper Assoc. v AGS Computers,* 74 NY2d 487; *Zuckerman v City of New York,* 49 NY2d 557.) II. The clear and unambiguous terms and conditions of the agreement are more than sufficient for a court to determine that Caldas Concrete Company, Inc. agreed to indemnify N & S Building Contractors, Inc. for damages assessed against it in the underlying action. (*Hooper Assoc. v AGS Computers,* 74 NY2d 487; *Tonking v Port Auth. of N.Y. & N.J.,* 3 NY3d 486.) III. Neither Workers' Compensation Law § 11, its legislative history, nor New York case law supports the Third Department's reasoning concerning its interpretation of the agreement. (*Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577; *Dole v Dow Chem. Co.,* 30 NY2d 143; *Boles v Dormer Giant, Inc.,* 4 NY3d 235; *Castro v United Container Mach. Group,* 96 NY2d 398; *Meis v ELO Org.,* 97 NY2d 714; *Secord v Willow Ridge Stables,* 261 AD2d 965; *Hooper Assoc. v AGS Computers,* 74 NY2d 487; *Tonking v Port Auth. of N.Y. & N.J.,* 3 NY3d 486; *Potter v M.A. Bongiovanni, Inc.,* 271 AD2d 918; *Linarello v City Univ. of N.Y.,* 6 AD3d 192.)

*Hanlon, Veloce & Wilkinson,* Albany (*Thomas J. Wilkinson* of counsel), for third-party defendants-respondents. The court below correctly dismissed appellant's third-party complaint because there was no written contract for the work at 284 Jansen Road. (*Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York,* 41 NY2d 205; *Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443; *Tompkins v Hunter,* 149 NY 117; *Dole v Dow Chem. Co.,* 30 NY2d 143; *Castro v United*

*Container Mach. Group,* 96 NY2d 398; *Meis v ELO Org.,* 97 NY2d 714; *Ferri v 63 Madison Assoc.,* 280 AD2d 419; *Mowczan v Bacon,* 92 NY2d 281; *Guijarro v V.R.H. Constr. Corp.,* 290 AD2d 485.)

*Hiscock & Barclay, LLP,* Albany (*Mark R. Sonders* and *Colleen D. Galligan* of counsel), for New York State Builders Association, Inc., amicus curiae. I. Workers' Compensation Law § 11 does not require specific language relating to the person covered, the types of losses covered and the specific job covered for the contractual indemnification exception to apply. (*Flores v Lower E. Side Serv. Ctr., Inc.,* 4 NY3d 363; *Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577; *Castro v United Container Mach. Group,* 96 NY2d 398; *Meis v ELO Org.,* 97 NY2d 714.) II. The Third Department's finding that an indemnification agreement under Workers' Compensation Law § 11 must include certain specific language violates the doctrine of stare decisis. (*Hooper Assoc. v AGS Computers,* 74 NY2d 487; *People v Hobson,* 39 NY2d 479; *Heyert v Orange & Rockland Util.,* 17 NY2d 352; *Cenven, Inc. v Bethlehem Steel Corp.,* 41 NY2d 842; *Robertson v Ongley Elec. Co.,* 146 NY 20; *Levine v Shell Oil Co.,* 28 NY2d 205; *Kurek v Port Chester Hous. Auth.,* 18 NY2d 450; *Niagara Frontier Transp. Auth. v Tri-Delta Constr. Corp.,* 107 AD2d 450; *Margolin v New York Life Ins. Co.,* 32 NY2d 149; *Inman v Binghamton Hous. Auth.,* 3 NY2d 137.) III. Affirmation of the Third Department's decision in *Rodrigues v N & S Bldg. Contrs., Inc.* (8 AD3d 876 [2004]), requiring specific language in an indemnification agreement beyond that required by Workers' Compensation Law § 11 and at variance with accepted customs and understandings, will have a profoundly negative effect on the residential construction industry. (*Walter Concrete Constr. Corp. v Lederle Labs.,* 99 NY2d 603; *Trump-Equitable Fifth Ave. Co. v H.R.H. Constr. Corp.,* 66 NY2d 779; *United States v Seckinger,* 397 US 203; *Johnson City Cent. School Dist. v Fidelity & Deposit Co. of Md.,* 226 AD2d 990; *Board of Educ. of Hudson City School Dist. v Sargent, Webster, Crenshaw & Folley,* 146 AD2d 190; *Gordon J. Phillips, Inc. v Concrete Materials,* 187 AD2d 1024; *Eis Group/Cornwall Hill Dev. Corp. v Rinaldi Constr.,* 154 AD2d 429; *Liberty Mgt. & Constr. v Fifth Ave. & Sixty-Sixth St. Corp.,* 208 AD2d 73.)

#### OPINION OF THE COURT

Chief Judge KAYE.

Workers' Compensation Law § 11 prohibits third-party

indemnification or contribution claims against employers, except where the employee sustained a "grave injury," or the claim is "based upon a provision in a written contract entered into prior to the accident or occurrence by which the employer had expressly agreed to contribution to or indemnification of the claimant or person asserting the cause of action for the type of loss suffered." This appeal centers on the latter exception, in particular whether the parties' agreement satisfied statutory requirements for a viable indemnification claim. We conclude that it did.*

## Facts

Third-party plaintiff N & S Building Contractors, Inc. was the general contractor for the construction of a single-family house located at 284 Jansen Road in Shawangunk, New York. N & S hired third-party defendant Caldas Concrete Company, Inc. as a subcontractor to erect the concrete foundation. The two companies had a longstanding relationship, having worked together approximately 20 times prior to the Jansen Road project. In February 2000 the parties entered into a one-page "Insurance, Indemnification and Safety Agreement." The Agreement required Caldas to carry certain insurance, name N & S as an additional insured on its general liability policy and furnish N & S with a certificate from the insurer that insurance was in force. The Agreement further provided that

> "[t]o the fullest extent permitted by law, Subcontractor [Caldas] shall indemnify and hold harmless N. & S. Building Contractors, Inc. and Owner against any claims, damages, losses, and expenses, including legal fees, arising out of or resulting from performance of subcontracted work to the extent caused in whole or in part by the Subcontractor or anyone directly or indirectly employed by the subcontractor."

Finally, the Agreement stated that the "[s]afety of [Caldas's]

---

* In its answer to third-party complaint, Caldas asserted affirmative defenses and a counterclaim for apportionment, contribution and indemnification against N & S. Those defenses and the counterclaim were not resolved by the summary judgment motions that are the subject of the present appeal. Although we conclude that N & S has established a right to indemnification as a matter of law, we do not consider the facts. N & S, of course, would not be entitled to indemnification from Caldas for losses resulting from its own negligence.

employees, whether or not in common work areas, is the responsibility of [Caldas]."

Caldas president Joaquin Januario signed the Agreement on February 7, 2000—the same date reflected on the certificate of liability insurance naming N & S as an additional insured under Caldas's commercial general liability insurance policy. Approximately four months later, on June 20, 2000, Caldas began work at the Jansen Road site pursuant to an oral agreement with N & S. The following day, Jose Rodrigues, a Caldas employee working at the site, tripped, fell into a trench and was impaled on a piece of rebar. Rodrigues, and his wife derivatively, sued N & S alleging numerous causes of action, all subsequently withdrawn except those alleging violations of Labor Law § 241 (6).

N & S commenced a third-party action against Caldas and its insurer, Transcontinental Insurance Company, seeking indemnification based on the Agreement and claiming that Transcontinental's refusal to defend and indemnify N & S was in bad faith. Supreme Court granted Caldas's motion to dismiss that claim, concluding that, because "there was no written contract between N&S and Caldas for the work being performed at 284 Jensen [*sic*] Road, the site of the accident," N & S's claim could not be sustained. The Appellate Division affirmed, holding that "the agreement does not unambiguously and expressly provide that Caldas must indemnify N & S for injuries sustained by Caldas employees in the scope of their employment" (8 AD3d 876, 878 [3d Dept 2004]). The Court added that "[t]he agreement specifies neither the persons covered nor the types of losses covered, contains no reference to the instant job site and states only that Caldas agrees to indemnify N & S '[t]o the fullest extent permitted by law' " (*id.* ·n 2). We granted N & S leave to appeal and now reverse.

## Discussion

N & S asks us to grant summary judgment declaring that Caldas must indemnify it for any losses sustained in the underlying personal injury action. Thus, we may grant the relief sought only if N & S has established, as a matter of law, that the Agreement entitled it to indemnity under Workers' Compensation Law § 11 (*see e.g. JMD Holding Corp. v Congress Fin. Corp.*, 4 NY3d 373, 384 [2005]).

At the outset, it is clear that, despite the Workers' Compensation Law shield of employers from liability as joint tortfeasors, a

third party may recover against an employer pursuant to contract (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 582 [1998]). Indeed, the statute expressly permits indemnification claims "based upon a provision in a written contract." Thus, there is no question that the Workers' Compensation Law allowed N & S and Caldas to enter into an agreement that would indemnify N & S for any losses it might suffer as a result of a personal injury action by a Caldas employee.

Whether the parties did in fact have such an agreement involves a two-part inquiry. First, we consider whether the parties entered into a written contract containing an indemnity provision applicable to the site or job where the injury giving rise to the indemnity claim took place. Second, if so, we examine whether the indemnity provision was sufficiently particular to meet the requirements of section 11.

Caldas argues, and Supreme Court held, that the absence of a written contract explicitly for the Jansen Road project bars N & S's indemnity claim. We disagree.

The indemnification provision of the parties' agreement applied to the "performance of subcontracted work" between them. The insurance provision similarly did not specify any particular job site or duration, and the safety provision made Caldas responsible for the safety of its workers, again without reference to any job site or time frame. In addition to the words of the Agreement, N & S vice-president Philip Neidermier testified at his deposition that the Agreement "refers to all of our sites that [Caldas] would work on . . . [i]ncluding that one [Jansen Road]." Caldas did not refute this evidence.

The language of the contract, as well as the testimony, make clear that the Agreement was purposely intended to, and did, apply to all jobs for which N & S hired Caldas as a subcontractor, including Jansen Road. In that no site is mentioned, the argument that the Agreement should not apply here because it does not specifically mention Jansen Road would render it inapplicable to any site or job N & S subcontracted to Caldas. An agreement should not be construed so as to render it meaningless.

The Agreement, moreover, satisfied section 11's requirement of a "written contract." Workers' Compensation Law § 11 requires only that the indemnification claim arise from an indemnification provision in a written contract entered into

before the injury. Here, the written agreement contained an indemnification provision, entered into before the injury.

Having concluded that the Agreement was a written contract between the parties applicable to the Jansen Road site, we next consider whether the indemnification provision was sufficiently clear and unambiguous. As we noted in *Hooper Assoc. v AGS Computers* (74 NY2d 487, 491-492 [1989] [citations omitted]),

> "[w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed. The promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances."

Here, the Agreement directly, firmly and explicitly evidenced Caldas's promise to assume responsibility for the safety of its employees, procure insurance protecting N & S and indemnify it in the event of an on-the-job injury. That Caldas arranged for the insurance required by the Agreement is further evidence that Caldas itself recognized that it had undertaken that obligation.

The Appellate Division appears to have interpreted the written-contract exception to Workers' Compensation Law § 11 to require that an indemnification provision specify the sites, persons and the types of losses covered. We are reluctant to impose specificity requirements not in the statute (*see Flores v Lower E. Side Serv. Ctr., Inc.*, 4 NY3d 363 [2005]). So long as a written indemnification provision encompasses an agreement to indemnify the person asserting the indemnification claim for the type of loss suffered, it meets the requirements of the statute. That standard was satisfied here.

Accordingly, the order of the Appellate Division should be reversed, with costs, defendant and third-party plaintiff N & S Building Contractors, Inc.'s motion for summary judgment as to the third-party action granted and judgment granted declaring that N & S Building Contractors, Inc. is entitled to indemnification from third-party defendant Caldas Concrete Company, Inc. for any judgment obtained by plaintiff against N & S Building Contractors, Inc. in the main action, to the extent that such judgment is not the result of N & S Building Contractors, Inc.'s own wrongdoing.

READ, J. (dissenting). The Legislature adopted the Omnibus

Workers' Compensation Reform Act in 1996 to shield employers from third-party indemnification or contribution claims except in the limited circumstances of a "grave injury," or for a claim "based upon a provision in a written contract entered into prior to the accident or occurrence *by which the employer expressly agreed* to contribution to or indemnification of the claimant or person asserting the cause of action for the type of loss suffered" (Workers' Compensation Law § 11 [emphasis added]). Merriam Webster's Collegiate Dictionary defines "express" as

"**1 a**: directly, firmly, and explicitly stated <my *express* orders> **b**: EXACT, PRECISE

"**2 a**: designed for or adapted to its purpose **b**: of a particular sort: SPECIFIC <for that *express* purpose>" (at 410 [10th ed 1997]).

As amicus New York State Builders Association, Inc., points out, however, the language in the indemnification provision of the agreement between the parties in this case "is substantially similar to that used . . . in form-documents prepared by The American Institute of Architects (AIA) and widely used and accepted throughout the construction industry." To be precise, the basis for the provision is A401-1997, issued for publication in October 1997. This type of generic indemnification, drafted for use nationwide in states without any equivalent to our rule in *Dole v Dow Chem. Co.* (30 NY2d 143 [1972]), does not clearly and unambiguously signal an employer's *express* agreement for purposes of section 11. Surely the employer must explicitly agree to indemnify for claims against which it would be safeguarded by section 11 unless there is a grave injury. Otherwise, section 11's promise of relief from third-party actions is illusory for large categories of employers—such as subcontractors—that routinely enter into contracts with standard form indemnifications. The Legislature cannot have intended or contemplated this result when it created an exception from the refuge of section 11 for an express agreement to forgo its protection. Accordingly, I respectfully dissent.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and R.S. SMITH concur with Chief Judge KAYE; Judge READ dissents in a separate opinion.

Order reversed, etc.