■ STACEY S. KILLON, Appellant, v ROBERT A. PARROTTA, Respondent. [950 NYS2d 525]—

Rose, J.P. Appeals (1) from an order of the Supreme Court (Muller, J.), entered April 8, 2011 in Warren County, which denied plaintiff's motion to set aside a verdict, and (2) from a judgment of said court, entered April 11, 2011 in Warren County, upon a verdict rendered in favor of defendant.

Plaintiff commenced this action against defendant seeking damages for injuries he sustained as a result of an alleged battery unlawfully committed upon him by defendant. In his answer defendant raised, as pertinent here, the affirmative defense of justification. After trial, the jury returned a verdict in favor of defendant, finding that he was justified in his use of what it found to be deadly physical force upon plaintiff. Plaintiff immediately moved to set aside the verdict as against the weight of the credible evidence and sought an order directing judgment in his favor. Supreme Court denied the motion and entered judgment on the verdict. Plaintiff now appeals from both the order denying his postverdict motion and the judgment, arguing that no fair interpretation of the evidence supports the jury's

finding that defendant's use of deadly physical force was justified.[1]

As a general rule, a verdict should not be set aside as against the weight of the credible evidence unless " 'the evidence so preponderate[d] in favor of the [movant] that [the verdict] could not have been reached on any fair interpretation of the evidence' " (*Biello v Albany Mem. Hosp.*, 49 AD3d 1036, 1037 [2008], quoting *Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]; *accord Dentes v Mauser*, 91 AD3d 1143, 1144 [2012]). We view the evidence in a light most favorable to defendant, as the nonmoving party (*see Adami v Wallace*, 68 AD3d 1397, 1398-1399 [2009]), and our review is tempered by the " 'considerable deference [that] must be accorded to the jury's interpretation of the evidence and resolution of credibility issues' " (*Harris v Parwez*, 13 AD3d 675, 677 [2004], quoting *Hess v Dart*, 282 AD2d 810, 811 [2001]; *see Vogel v Cichy*, 53 AD3d 877, 878 [2008]; *Heilbrunn v Town of Woodstock*, 50 AD3d 1377, 1378 [2008]). Nevertheless, as the verdict finding that defendant acted in self-defense required a conclusion that defendant was not the initial aggressor in the encounter, we must agree with plaintiff that no fair interpretation of the evidence supports that conclusion.

According to defendant's own testimony, he became upset and angry when he received two threatening phone calls from plaintiff shortly after midnight. Although he knew that plaintiff had been drinking, he immediately got into his pickup truck and drove 20 miles to plaintiff's home with the intention of settling their ongoing dispute "man to man." When defendant arrived at plaintiff's home, he parked his truck in the driveway with the headlights shining on plaintiff's front door and got out. Plaintiff stepped out onto the small front porch of his home, saw that defendant was on his property and retrieved a maul handle from inside the house. In order to "level the playing field," defendant then pulled a baseball bat from his truck. As defendant stood in front of his truck some 30 to 40 feet from plaintiff, who stayed on his porch, the two men yelled obscenities back and forth at each other while plaintiff repeatedly banged the maul handle hard on the deck of the porch. Nevertheless, defendant began to walk toward plaintiff's house. Although plaintiff yelled to his chained dog to "sic" defendant as he approached the house, defendant skirted the limited range of the dog's chain and continued to advance on the porch with the bat in his hand as each man yelled taunts and challenges at the

---

1. The jury's finding that defendant used deadly physical force on plaintiff when he struck him with the baseball bat is not disputed.

other. When defendant reached the porch steps and was almost face to face with plaintiff, more angry words were exchanged and defendant again challenged plaintiff to drop his weapon and come down from the porch for a fist fight. Instead, plaintiff remained on his porch, told defendant to get off his property and then swung the maul handle. In response, defendant struck plaintiff with the bat.

The defense of justification is not available to the initial aggressor (see Penal Law § 35.15 [1] [b]; People v Peele, 73 AD3d 1219, 1221 [2010], lv denied 15 NY3d 894 [2010]; People v Ham, 67 AD3d 1038, 1039 [2009]; People v Mungin, 106 AD2d 519, 519 [1984]). Supreme Court instructed the jury that the initial aggressor is "the person who first attacks or threatens to attack, that is, the first person who uses or threatens the immediate use of . . . physical force." Supreme Court also instructed the jury that verbal threats could not be considered in determining who was the initial aggressor.[2] Despite plaintiff's prior threatening phone calls and the evidence that plaintiff was the first of the two to swing his club, there is no dispute that defendant drove to plaintiff's home and then advanced on plaintiff's front porch with a bat in his hand while demanding a fist fight. Given these circumstances, the jury's conclusion that defendant was not the first to threaten the immediate use of physical force is unreachable on any fair interpretation of the evidence (see Matter of Anthony E., 82 AD3d 1544, 1545-1546 [2011]; see also People v Ryan, 55 AD3d 960, 963 [2008]; People v Grady, 40 AD3d 1368, 1372 [2007], lv denied 9 NY3d 923 [2007]). Inasmuch as defendant chose to force this encounter, he could have—and should have—withdrawn from it long before he reached plaintiff's porch steps.

Malone Jr. and Garry, JJ., concur.

Stein, J. (dissenting). We respectfully dissent. In our view, there is a fair interpretation of the evidence that supports the conclusion that defendant was not the initial aggressor and, therefore, the jury's verdict should not be disturbed.

It is well settled that the discretionary power to set aside a jury verdict must be exercised with great caution, as "a successful litigant is entitled to the benefits of a favorable jury verdict" (Nicastro v Park, 113 AD2d 129, 133 [1985]; see Olmsted v Pizza Hut of Am., Inc., 81 AD3d 1223, 1224 [2011]). Appellate review of a trial court's exercise of discretion as to whether to set aside

---

**2.** As this charge was given without objection, it is the law of the case (see Passantino v Consolidated Edison Co. of N.Y., 54 NY2d 840, 842 [1981]; Schnarch v Owen, 124 AD2d 372, 373 [1986]; Paul v Kagan, 92 AD2d 988, 988 [1983]; but see People v Petty, 7 NY3d 277, 285 [2006]).

a jury verdict must take into account the fact that the court has "heard and seen the witnesses testify . . . [and] has had the opportunity to observe courtroom events that might have [properly] influenced the jury's evaluation of the evidence" (*Nicastro v Park*, 113 AD2d at 136-137). Based upon our review of the record here, we agree with Supreme Court's determination that there is a fair interpretation of the evidence to support the jury's verdict.

The evidence at trial included defendant's testimony that, after receiving two telephone calls from plaintiff in which plaintiff threatened to "f[. . . defendant] up," defendant drove to plaintiff's home because he wanted to speak with plaintiff to "end the situation." Defendant testified that, as he approached the porch, plaintiff was repeatedly pounding the maul handle he had retrieved from inside his home "very hard" on the floor of the porch. When defendant reached the porch, plaintiff "cock[ed] his arm" by lifting the handle over his head and then, "[o]ut of the blue, [plaintiff] swung." Defendant further testified that, at the moment he saw plaintiff raise his arm up to swing, he believed that he was in "jeopardy," "covered up" and swung the bat at plaintiff "as hard as [he] could." We are of the view that, notwithstanding some conflicting testimony, when we accord due deference to the jury's credibility determinations, this constitutes viable evidence to support its conclusion that, at the moment that plaintiff raised his arm, defendant actually believed that plaintiff was about to cause him serious physical injury and that a reasonable person in defendant's circumstances could have so believed (*see People v Fisher*, 89 AD3d 1135, 1137 [2011], *lv denied* 18 NY3d 883 [2012]).

Moreover, as the majority notes, Supreme Court instructed the jury, without objection, that "[i]nitial aggressor means the person who first attacks or threatens to attack, that is, the *first* person who uses or threatens the *immediate* use of . . . physical force" [emphasis added]. In our view, the fact that defendant went to plaintiff's home, approached the porch holding a bat and invited plaintiff to fist fight with him does not *require* a finding that defendant was the initial aggressor. The jury was entitled to consider, as it apparently did, that defendant—in an effort to verbally resolve a problem with plaintiff—went to plaintiff's home in response to repeated belligerent phone calls from plaintiff, that plaintiff retrieved the maul handle from inside the house when defendant had no weapon in hand and that plaintiff was the first to actually attempt to use force im-

mediately preceding defendant's use thereof.* While the majority's view of the evidence is not unreasonable, the jury was well within its province to interpret the evidence as it did and we would, therefore, affirm Supreme Court's order and judgment.

Egan Jr., J., concurs. Ordered that the order and judgment are reversed, on the law, motion to set aside the verdict granted, and matter remitted to the Supreme Court for a new trial, with costs to abide the event.

---

* In addition, while Supreme Court did, indeed, instruct the jury that verbal threats could not be considered in determining who was the initial aggressor, contrary to the holding in *People v Petty* (7 NY3d 277, 285 [2006]), it is unclear from the record whether the instruction was limited to verbal threats made at the time of the parties' encounter or whether it also encompassed prior threats made by plaintiff.