Louis Trombley, Plaintiff, v Michael Socha et al., Individually and Doing Business as Shady Lane Realty Company et al., Defendants and Third-Party Plaintiffs-Appellants. Michael Sullivan, Individually and Doing Business as Spa Pole Building, Third-Party Defendant-Respondent. [980 NYS2d 588]—

Egan Jr., J.

We affirm. Insofar as is relevant here, Workers' Compensation Law § 11 precludes third-party indemnification claims against employers unless the claim is "based upon a provision in a written contract entered into prior to the accident or occurrence by which the employer had expressly agreed to contribution to or indemnification of the . . . person asserting the cause of action for the type of loss suffered" (*accord Rodrigues v N & S Bldg. Contrs., Inc.*, 5 NY3d 427, 429-430 [2005]; *see Meabon v Town of Poland*, 108 AD3d 1183, 1184 [2013]; *Staub v William H. Lane, Inc.*, 58 AD3d 933, 934 [2009]). "When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed" (*LaFleur v MLB Indus., Inc.*, 52 AD3d 1087, 1088 [2008] [internal quotation marks and citations omitted]; *accord Meabon v Town of Poland*, 108 AD3d at 1185). "Whether the parties did in fact have such an agreement involves a two-part inquiry. First, we consider whether the parties entered into a written contract containing an indemnity provision applicable to the site or job where the injury giving rise to the indemnity claim took place. Second, if so, we examine whether the indemnity provision was sufficiently particular to meet the requirements of [Workers' Compensation Law § ] 11" (*Rodrigues v N & S Bldg. Contrs., Inc.*, 5 NY3d at 432; *accord Auchampaugh v Syracuse Univ.*, 67 AD3d 1164, 1164-1165 [2009]; *Staub v William H. Lane, Inc.*, 58 AD3d at 934). Notably, "the common-law rule—which authorizes review of the course of conduct between the parties to determine whether there was a meeting of the minds sufficient to give rise to an enforceable contract—governs the validity of a written indemnification agreement under Workers' Compensation Law § 11" (*Flores v Lower E. Side Serv. Ctr., Inc.*, 4 NY3d 363, 369-370 [2005]).

The rider at issue here provided, in relevant part, that, "[t]o the fullest extent permitted by law, [Sullivan] will indemnify and hold harmless [Socha Builders] . . . from and against any and all claims . . . arising in whole or in part . . . from [the]

injury . . . of any person . . . resulting from [Sullivan's] acts [or] omissions . . . in connection with the performance of any work by or for [Sullivan] pursuant to this contract." Thus, the dispositive question is whether this rider, which was executed by Sullivan in July 2004, satisfied the first prong of the *Rodrigues* test, i.e., did it contain a clearly expressed assumption of an obligation by Sullivan to indemnify Socha Builders for the injuries suffered by plaintiff in December 2006.

As noted previously, Socha testified that, beginning in 2002, he required all contractors working for the various Socha entities to sign the foregoing rider. Socha further testified that he did not require individual contractors to execute separate indemnification riders for each subsequent project undertaken, as it was his understanding that the previously signed rider would cover all future work performed by a particular contractor. According to Socha, he explained this process to Sullivan when Sullivan executed the rider in July 2004, i.e., he advised Sullivan that the indemnification rider would apply to all future work that Sullivan performed. Socha acknowledged, however, that he did not recall precisely what he said to Sullivan during the course of this conversation; rather, he believed that he advised Sullivan as to the effect of the rider because that had been his practice with other contractors. Additionally, Socha admitted that, at the time that the rider was executed, there was no specific discussion of Sullivan performing additional work for the Socha entities, nor was the indemnification rider attached to any of the proposals that Sullivan thereafter submitted— including the proposal covering the project during which plaintiff sustained his injuries.

Although Sullivan acknowledged that he signed the rider in July 2004, he testified that he did not have a clear understanding of the document and that Socha simply represented that the rider was required by the insurance carrier in order for Sullivan "to do work on the property." Sullivan did not recall Socha advising him that the rider would apply to all future construction projects and testified that, at the time he executed the rider, there was no discussion of him performing additional work for Socha Builders beyond the pole barn that he then was constructing.* According to Sullivan, there also was no further discussion of the indemnification rider with Socha, nor was the rider ever attached to or referenced in any of the proposals that he thereafter submitted to Socha. Finally, the record reflects that between 2004 and 2006, Sullivan performed work for Socha Builders "[m]aybe once a year."

---

* Sullivan testified that his business dealings with Socha Builders were "very informal."

Upon reviewing all of the testimony, as well as the language of the indemnification rider, we cannot say that the evidence so preponderated in favor of third-party plaintiffs that the verdict could not have been reached upon any fair interpretation of the evidence (*see generally Killon v Parrotta*, 98 AD3d 828, 829 [2012]). At best, the rider is ambiguous as to whether its applicability was limited to a particular contract or proposal between the signatories thereto and, in light of Socha's and Sullivan's contrary testimony, we are unable to conclude that there was a sufficient meeting of the minds as to otherwise give rise to an enforceable contract of indemnification (*compare Rodrigues v N & S Bldg. Contrs., Inc.*, 5 NY3d at 432). Finally, while it is true that Sullivan did provide certificates of insurance naming Socha Builders as a certificate holder, "[a]n agreement to procure insurance is *not* an agreement to indemnify or hold harmless" (*Rodriguez v Seven Seventeen HB Buffalo Corp.*, 56 AD3d 1280, 1281 [2008] [internal quotation marks and citation omitted]). For all these reasons, we agree with Supreme Court that third-party plaintiffs failed to establish by a preponderance of the evidence that Sullivan expressly agreed to indemnify them with respect to the claim filed by plaintiff. Accordingly, Supreme Court's judgment is affirmed.

Peters, P.J., Lahtinen and Stein, JJ., concur. Ordered that the judgment is affirmed, without costs.