EVAN B. MILLER, Plaintiff, v MARILYN LARKIN, as Executor of the Estate of JOHN P. LARKIN, Defendant and Third-Party Plaintiff-Respondent. HERITAGE ENVIRONMENTAL PROJECTS, INC., Third-Party Defendant-Appellant. [51 NYS3d 684]—

Lynch, J. Appeal from an order of the Supreme Court (Chauvin, J.), entered February 11, 2016 in Saratoga County, which, among other things, denied third-party defendant's motion for summary judgment dismissing the third-party complaint.

In 2004, John P. Larkin, then owner of Larkin Realty, entered into a written "restoration agreement" with third-party defendant, Heritage Environmental Projects, Inc., to perform lead abatement work to convert a former ROTC building into apartment units. The project was conducted in four phases, with 15 apartment units to be completed during each phase. The restoration agreement required Heritage to provide workers' compensation and liability insurance, to "relieve [Larkin] of liability from any accidents that may arise during [Heritage's] performance of the work," as specified in a revised proposal covering an area embraced within phase one. In August 2009, plaintiff fractured his wrist while working for Heritage during phase three. Plaintiff thereafter commenced this action against Larkin alleging violations of Labor Law §§ 200, 240 and 241, as well as common-law negligence. Larkin, in turn, commenced a third-party action against Heritage seeking contractual indemnification. Supreme Court thereafter denied a motion by Heritage and a cross motion by defendant* for summary judgment, finding a question of fact as to whether Larkin was entitled to indemnification under Workers' Compensation Law § 11. Heritage now appeals.

---

* Sometime after commencement of this action but prior to the filing of the respective motions, Larkin died and defendant was substituted for him in this matter.

We affirm. Pertinent here, Workers' Compensation Law § 11 precludes third-party indemnification claims against an employer unless the claim is "based upon a provision in a written contract entered into prior to the accident or occurrence by which the employer had expressly agreed to contribution to or indemnification of the claimant or person asserting the cause of action for the type of loss suffered." There is no dispute that had plaintiff been injured during phase one, Heritage would have been contractually bound to indemnify Larkin on the claim. The pivotal question is whether the 2004 restoration agreement imposed an indemnification obligation for work performed beyond phase one. "Whether the parties did in fact have such an agreement involves a two-part inquiry. First, we consider whether the parties entered into a written contract containing an indemnity provision applicable to the site or job where the injury giving rise to the indemnity claim took place. Second, if so, we examine whether the indemnity provision was sufficiently particular to meet the requirements of [Workers' Compensation Law § ] 11" (*Rodrigues v N & S Bldg. Contrs., Inc.*, 5 NY3d 427, 432 [2005]).

By its terms, the restoration agreement identifies the project location as the "[f]ormer ROTC Building" and defines the "[s]cope of [w]ork and [p]roject [c]osts as specified by [Heritage's] [November 10, 2004] revised proposal." Although neither document expressly identifies this proposal as phase one, Larkin's representative, Deborah Sherman, acknowledged in her deposition testimony that the proposal pertained to phase one, explaining that, "at the time, only [p]hase [one] existed." Sherman further explained, "I always understood that [the 2004 restoration agreement] was the master agreement," which would have applied to "the first and subsequent" phases. That said, she was unable to provide any further written agreements pertaining to the follow up phases and acknowledged verbally authorizing Heritage to proceed with phase two and phase three. She also acknowledged receiving a written proposal from Heritage for phase three, which does not include indemnification language. For his part, James Pierson, who owns Heritage, testified in his deposition that he understood that the restoration agreement was limited to phase one, with no guarantee that Heritage would be hired to complete the balance of the project. With respect to paragraph 3 of the agreement, which provides for "[p]rogress [p]ayments based on completion of phases of the work," Pierson explained that the clause was limited to phases within phase one. Not to be overlooked, however, is the fact that Heritage continued to provide liability insurance during phase three, naming Larkin

as a "certificate holder." Given the nature of the project and the differing interpretations offered by the parties as recited above, we agree with Supreme Court that a question of fact has been presented as to whether Heritage is contractually obligated to indemnify Larkin on this claim requiring resolution at trial (*see Murphy v Longview Owners, Inc.*, 13 AD3d 346, 347 [2004]; *compare Trombley v Socha*, 113 AD3d 921, 922-923 [2014]).

Garry, J.P., Clark, Mulvey and Aarons, JJ., concur. Ordered that the order is affirmed, with costs.