| **Adams v 1128 36th LLC** |
|:---:|
| 2026 NY Slip Op 30706(U) |
| March 2, 2026 |
| Supreme Court, Kings County |
| Docket Number: Index No. 515713/2018 |
| Judge: Anne J. Swern |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Term, Part 75 Supreme Court of the State of New York, Kings County, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 2nd day of March 2026.

PRESENT: HON. ANNE J. SWERN, J.S.C.

-----------------------------------------------------------------------------X

JACK ADAMS,

                *Plaintiff,*

    - *against* -

1128 36th LLC and APARTMENT DEVELOPERS, LLC,

                *Defendants.*

-----------------------------------------------------------------------------X

1128 36th LLC,

                *Third-Party Plaintiff,*

    - *against* –

APARTMENT DEVELOPERS, LLC and 1 SEAL USA LLC,

                *Third-Party Defendant.*

-----------------------------------------------------------------------------X

1128 36th LLC,

                *Second Third-Party Plaintiff,*

    - *against* -

A1 MECHANICAL SEAL INC.,

                *Second Third-Party Defendant.*

-----------------------------------------------------------------------------X

APARTMENT DEVELOPERS LLC,

                *Third Third-Party Plaintiff,*

    - *against* -

A1 MECHANICAL SEAL INC.,

                *Third Third-Party Defendant.*

-----------------------------------------------------------------------------X

1 SEAL USA LLC,

                *Fourth Third-Party Plaintiff,*

    - *against* -

A1 MECHANICAL SEAL INC.,

                *Fourth Third-Party Defendant.*

-----------------------------------------------------------------------------X

**DECISION & ORDER**

Index No.:    515713/2018

Motion Seq.:  10, 11 & 12

Return Date:  12/18/2025

*515713/2018*
*Page 1 of 13*

*Recitation of the following papers as required by CPLR § 2219 (a)*:

| **Papers Numbered**: | **NYSCEF Doc No.**: |
|---|---|
| Notice of Motion and Supporting Documents............................................. | 153-175; 202-219; 285-301 |
| Affirmations in Opposition and Supporting Documents............................ | 182-198; 222-224; 227-228; 230; 258; 270-282; 302; 303; 304-307; 308-309; 310; 311; 314 |
| Reply Affirmations and Supporting Documents ....................................... | 229; 244-246; 261; 312-313; 315 |

*Upon the foregoing papers, the decision and order of the Court is as follows*:

On July 16, 2018, plaintiff Jack Adams (plaintiff) fell off an extension ladder and was injured, while performing fire-proofing during the post-construction, customization phase (the customized fire-proofing) of a new commercial building owned by defendant/third-party plaintiff/second third-party plaintiff 1128 36th Street LLC (the Owner). Defendant/third-party defendant/third third-party plaintiff Apartment Developers LLC (ADL) was the Owner's construction manager for the building. Third-party defendant/fourth third-party plaintiff 1 Seal USA LLC (1-Seal) was ADL's subcontractor for the customized fire-proofing. 1-Seal, in turn, subcontracted the entirety of the customized fire-proofing to plaintiff's employer, second third-party defendant/third third-party defendant/fourth third-party defendant A1 Mechanical Seal Inc. (A1-M).

**Procedural History**

On August 1, 2018, plaintiff commenced this action against the Owner and subsequently against ADL, alleging violations of Labor Law §§ 240 (1), 241 (6), and 200, as well as in common-law negligence. Thereafter, the Owner commenced a third-party action against ADL and 1-Seal (which was ADL's customized fire-proofing subcontractor), as well as a separate, second third-party action against A1-M (which was 1-Seal's sub-subcontractor and plaintiff's

[* 2]

employer), in each instance, for (among other claims) contractual indemnification. In a similar manner, ADL and 1-Seal commenced third and fourth third-party actions, respectively, against A1-M.

On October 26, 2023, plaintiff filed a note of issue and certificate of readiness. By notice of motion, dated November 15, 2023, the Owner moved for an order vacating the note of issue, which motion was denied by order, dated December 14, 2023 (Ruchelsman, J.), with the proviso that the outstanding pretrial depositions of (among others) ADL's co-owner Yoel Schwimmer (Schwimmer) be completed by a specified date. Twelve days later on December 26, 2023, plaintiff moved for partial summary judgment on the issue of liability on his Labor Law § 240 (1) claim against both the Owner and ADL.

On June 26, 2024, which was outside the 60-day deadline for moving for summary judgment in Kings County Supreme Court, ADL moved for summary judgment dismissing plaintiff's Labor Law § 240 (1) claim, as well as all of his other claims against it. Approximately one year later on October 16, 2025, and while discovery in the four separate third-party actions was still ongoing, the Owner sought leave to cross-move for summary judgment, and, upon granting such leave, moved for summary judgment on the Owner's contractual indemnification third-party claims (or a cross-claim, as applicable) against each of ADL, 1-Seal, and A1-M, and, in addition, for an order precluding ADL from opposing the Owner's cross-motion "due to its failure/refusal to produce . . . Schwimmer for deposition in this matter."[1]

On October 23, 2025, the Court heard oral arguments on the pending motions and cross-motion. In relevant part, the Court directed ADL to produce Schwimmer for deposition by no later than November 6, 2025, and permitted the Owner to supplement its cross-motion based on

---

[1] Owner's Notice of Cross-Motion, dated October 16, 2025, ¶ A (NYSCEF Doc No. 285).

Schwimmer's pretrial testimony and adjourned the motions to 12/18/2025.[2] On October 30, 2025, Schwimmer was deposed. On December 18, 2025, the Court heard additional oral argument on the motions and cross-motion (as supplemented), and reserved decision.

**Law and Analysis**

"[S]ummary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a triable issue" (*Rotuba Extruders, Inc. v Ceppos*, 46 NY2d 223, 231 [1978] [internal quotation marks omitted]). "[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issue of fact" (*Alvarez v Prospect Park Hosp.*, 68 NY2d 320, 324 [1986]). When evaluating a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party" (*Vega v Restani Const. Corp.*, 18 NY3d 499, 503 [2012] [internal quotation marks omitted]). "It is not the function of a court deciding a summary judgment motion to make credibility determinations or findings of fact, but rather to identify material issues of fact (or point to the lack thereof)" (*Vega*, 18 NY3d at 505).

As noted, plaintiff moved for partial summary judgment on the issue of liability on his Labor Law § 240 (1) claim against both the Owner and ADL, whereas ADL moved for summary judgment dismissing such claim (among other plaintiff's claims) against it. "Labor Law § 240 (1) imposes upon owners and general contractors, and their agents, a nondelegable duty to provide safety devices necessary to protect workers from risks inherent in elevated work sites" (*McCarthy v Turner Constr., Inc.*, 17 NY3d 369, 374 [2011]). "To prevail on a cause of action alleging a violation of Labor Law § 240 (1), a plaintiff must establish that the statute was

_____

[2] Owner's Supplemental Affirmation in Support of Cross-Motion, dated November 20, 2025, ¶ 2 (NYSCEF Doc No. 304).

violated and that the violation was a proximate cause of his or her injuries" (*Lopez-Dones v 601 W. Assoc., LLC*, 98 AD3d 476, 479 [2d Dept 2012]). "Once the plaintiff makes a prima facie showing the burden then shifts to the defendant, who may defeat [the] plaintiff's motion for summary judgment only if there is a plausible view of the evidence – enough to raise a fact question – that there was no statutory violation and that [the] plaintiff's own acts or omissions were the sole cause of the accident" (*Blake v Neighborhood Hous. Servs. of New York City, Inc.*, 1 NY3d 280, 289 n 8 [2003] [alterations in the original]; *Lopes v County of Suffolk*, 236 AD3d 883, 884 [2d Dept 2025]). "Whether a device provides proper protection is a question of fact, except when the device collapses, moves, falls, or otherwise fails to support the plaintiff and his or her materials" (*Melchor v Singh*, 90 AD3d 866, 868 [2d Dept 2011]). With respect to ladders, "liability will be imposed when the evidence shows that the subject ladder was . . . inadequately secured and that . . . the failure to secure the ladder, was a substantial factor in causing the plaintiff's injuries" (*Mora v 1-10 Bush Term. Owner, L.P.*, 214 AD3d 785, 786 [2d Dept 2023] [internal quotation marks omitted]).

Here, plaintiff demonstrated, prima facie, that he was entitled to summary judgment as a matter of law on the issue of liability on his Labor Law § 240 (1) claim against both the Owner and ADL by submitting evidence (in the form of his pretrial testimony) that: (1) the ladder suddenly and for no apparent reason collapsed under him causing him to fall from a height of approximately six to seven feet to the concrete floor below; and (2) he was not provided with any safety devices (*see Ruiz v Ewan*, 240 AD3d 541, 542 [2d Dept 2025]; *Garcia v Fed LI, LLC*, 239 AD3d 942, 945 [2d Dept 2025]; *Acatila v Really Neat Realty, Inc.*, 239 AD3d 926, 927 [2d Dept 2025]; *Keen v Tishman Constr. Corp. of New York*, 233 AD3d 1001, 1003 [2d Dept 2024]; *Paiba v 56-11 94th St. Co., LLC*, 228 AD3d 881, 882 [2d Dept 2024]; *Salinas v 64 Jefferson Apts., LLC*, 170 AD3d 1216, 1222 [2d Dept 2019]).

In opposition, the Owner and ADL failed to raise a triable issue of fact as to whether plaintiff's own acts or omissions were the sole proximate cause of his injuries (*see Paiba*, 228 AD3d at 882). Plaintiff's alleged misuse of the ladder by his placement of it on the downward-sloping ramp could not have been the sole proximate cause of the accident because he was not provided with any safety devices (*i.e.*, a scaffold), nor was he instructed to use such safety devices (*see Gallagher v New York Post*, 14 NY3d 83, 88-89 [2010]; *Garcia*, 239 AD3d at 945; *Doto v Astoria Energy II, LLC*, 129 AD3d 660, 662-663 [2d Dept 2015]).[3] A coworker who was holding plaintiff's ladder was "not a safety device contemplated by the statute [Labor Law § 240 (1)]" (*McCarthy v Turner Const., Inc.*, 52 AD3d 333, 334 [1st Dept 2008], *appeal dismissed* 71 AD3d 511 [1st Dept 2010]; *see also Noor v City of New York*, 130 AD3d 536, 541 [1st Dept 2015], *lv dismissed* 27 NY3d 975 [2016]). Insofar as the Owner and ADL contended that a triable issue of fact existed concerning whether plaintiff was the sole proximate cause of the accident by being a recalcitrant worker who disregarded the allegedly available safety devices, there was no evidence in the record to support their contention (*see Buzzetta v NYU Hosps. Ctr.*, 241 AD3d 628, 629 [2d Dept 2025]; *Estrella v ZRHLE Holdings, LLC*, 218 AD3d 640, 644 [2d Dept 2023]).

Contrary to ADL's contention that it was a construction manager (rather than a general contractor), it is nevertheless liable under Labor Law § 240 (1) as a statutory "agent" because it had "the authority to supervise or control the activity bringing about the injury so as to enable it to avoid or correct the unsafe condition" (*Weekes v Tishman Tech. Corp.*, 238 AD3d 948, 951 [2d Dept 2025] [internal quotation marks omitted]; *Ramirez v Pace Univ.*, 230 AD3d 811, 813

---

[3] *Compare Araujo v Monadnock Constr., Inc.*, 241 AD3d 470, 472 (2d Dept 2025), *Kosinski v Brendan Moran Custom Carpentry, Inc.*, 138 AD3d 935, 936 (2d Dept 2016), *Daley v 250 Park Ave., LLC*, 126 AD3d 747, 749 (2d Dept 2015), *Reyes v Khan*, 90 AD3d 734 (2d Dept 2011), each of which involved a misuse or mispositioning of a ladder.

[2d Dept 2024]). Although ADL did not directly supervise or control plaintiff's work, the pretrial testimony of ADL's witnesses demonstrated that: (1) ADL's site manager had the authority to stop any unsafe work in the building; (2) the customized fire-proofing which plaintiff was performing at the time of the accident required the use of scaffolds (rather than of ladders); and (3) ADL's "site manager was responsible [for overseeing safety at the building site]" because no site-safety personnel was visiting the building site at the customized fire-proofing stage of construction.[4] Under these circumstances, ADL was a statutory agent of the Owner and, therefore, liable for plaintiff's injuries under Labor Law § 240 (1) (*see Weekes*, 238 AD3d at 952; *Barrios v City of New York*, 75 AD3d 517, 519 [2d Dept 2010]; *Tomoyuki v Junefield Assn.*, 57 AD3d 518, 520 [2d Dept 2008]; *McGlynn v Brooklyn Hosp.-Caledonian Hosp.*, 209 AD2d 486 [2d Dept 1994]).[5]

Accordingly, plaintiff's motion for partial summary judgment on the issue of liability on his Labor Law § 240 (1) claim is *granted against both the Owner and ADL*. Conversely, the

---

[4] *See* ADL's Construction Superintendent Yoel Blum's EBT transcript, page 37, lines 5-9; page 38, lines 9-13; page 41, lines 4-12; page 46, lines 10-22; page 97, lines 6-9; page 117, lines 18-23 (NYSCEF Doc No. 171). *See also* ADL's Co-Owner Yoel Schwimmer's EBT transcript, page 30, line 15 to page 32, line 9 (confirming that ADL's "site manager[ ] [had] authority to stop work if [he or she] saw something that was hazardous [at the building site]"); page 33, line 23 to page 34, line 6 (further confirming that ADL's "site manager was responsible [for overseeing safety at the building site]") (NYSCEF Doc No. 306).

[5] *Compare Borbeck v Hercules Const. Corp.*, 48 AD3d 498, 498 (2d Dept 2008) ("[T]he [defendant] construction manager of the subject project, was not a statutory agent of the owner pursuant to Labor Law § 240 [1]" because "[t]he evidence presented at the trial did not establish that the defendant had the authority to enforce the provisions of the contracts entered into by the owner with the project's prime contractors. Nor did [the defendant] have the authority to stop the work in the event that an unsafe condition or work practice came to light. Thus, the defendant did not have the authority to control and supervise the work to become the owner's statutory agent."); *Balthazar v Full Circle Const. Corp.*, 268 AD2d 96, 98 (1st Dept 2000) ("[T]he contract [with the Construction Manager] was specific that '[t]he Construction Manager's responsibilities for coordination of safety programs shall not extend to direct control over or charge of the acts or omissions' of persons other than [the Construction Manager's] own employees.").

branch of ADL's motion for summary judgment dismissing plaintiff's Labor Law § 240 (1) claim as against it is *denied*.

As noted, the remaining branch of ADL's motion seeks dismissal of plaintiff's remaining claims, as against it, sounding in violations of Labor Law §§ 241 (6) and 200, as well as in common-law negligence. This branch of ADL's motion is *denied, in the Court's discretion*, as untimely for three reasons; first, plaintiff's timely served motion addressed only his Labor Law § 240 (1) claim, but no other claims, against ADL (*see Acosta v Shanahan Group, LLC*, 240 AD3d 557, 558 [2d Dept 2025]); second, ADL's motion, insofar as it sought dismissal of plaintiff's claims, other than his Labor Law § 240 (1) claim, was untimely by approximately six months; and third and finally, ADL's opening papers provided no explanation for its delay[6] (*see Landaverde v Joseph*, 244 AD3d 973 [2d Dept 2025]; *Dojce v 1302 Realty Co., LLC*, 199 AD3d 647, 650 [2d Dept 2021]). In any event, the remaining branch of ADL's motion is *denied on the merits*. Contrary to ADL's contention,[7] plaintiff specified in his bill of particulars the Industrial Code provisions underlying his Labor Law § 241 (6) claim which ADL allegedly violated.[8] With respect to plaintiff's Labor Law § 200/common-law negligence claim, ADL failed to address the merits of this claim (or lack thereof) in its opening papers.

Lastly, the Court turns to address the Owner's cross-motion for leave to cross-move for summary judgment, and, upon granting such leave, for summary judgment on the Owner's contractual indemnification third-party claims as against each of ADL, 1-Seal, and A1-M, and, in addition, for an order precluding ADL from opposing the Owner's summary judgment motion as

---

[6] ADL first raised the "good cause" grounds for the remaining branch of its motion in its reply affirmation, dated August 21, 2024, ¶¶ 5-10 (NYSCEF Doc No. 244).

[7] ADL's memorandum of law in support of its motion for summary judgment, dated June 26, 2024, Part C (NYSCEF Doc No. 204).

[8] Plaintiff's Verified Bill of Particulars, dated November 15, 2019, ¶ 14 (NYSCEF Doc No. 163).

against it on account of its (since-cured) failure to produce Schwimmer. Under the circumstances of this case, the Court, in its discretion, *grants* the Owner leave to cross-move for summary judgment. Extensive third-party discovery was ongoing in this case, and, at the time of the Owner's cross-motion, ADL's co-owner Schwimmer had not been produced (*see Munoz v Agenus, Inc.*, 207 AD3d 643, 644 [2d Dept 2022]; *Kung v Zheng*, 73 AD3d 862, 863 [2d Dept 2010]). Upon granting leave, the Court *denies as academic* the branch of the Owner's cross-motion which seeks relief in connection with the previously asserted (but since-cured) failure to produce Schwimmer.

Turning to the remaining branch of the Owner's cross-motion which is for summary judgment on its third-party claims, the Court starts with the well-established principle that Workers' Compensation Law § 11 prohibits third-party claims for indemnification against an employer unless: (1) the employee has sustained a "grave injury," or (2) "when there is a 'written contract entered into prior to the accident or occurrence by which the employer had expressly agreed to . . . indemnification of the claimant'" (*Mikulski v Adam R. W., Inc.*, 78 AD3d 910, 911 [2d Dept 2010] [internal citation omitted]). It is undisputed that the first statutory exception – an employee sustaining a "grave injury" – does not apply here because plaintiff did not sustain a grave injury as defined by the statute.[9] Conversely, the second statutory exception – "a written contract [which was entered into prior to the accident] . . . by which the employer [A1-M] had expressly agreed to . . . indemnification of the claimant" – is satisfied in this case because A1-M

---

[9] "Grave injuries are those injuries that are listed in the statute and are determined to be permanent" (*Persaud v Bovis Lend Lease, Inc.*, 93 AD3d 831, 832 [2d Dept 2012]). They are defined in Workers' Compensation Law § 11 (1) as "only one or more of the following: death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability." Here, plaintiff's Verified and First Supplemental Bills of Particulars, both dated November 15, 2019, did not allege that he suffered a grave injury as listed in the statute (NYSCEF Doc No. 163).

"*expressly agreed* to indemnify" the Owner in each of (1) the Owner's contract with ADL, (2) the ADL's subcontract with 1-Seal, and (3) the 1-Seal's sub-subcontract with A1-M (*Tonking v Port Auth. of New York & New Jersey*, 3 NY3d 486, 490 [2004] [internal quotation marks omitted; emphasis added]). However, the triggers to the contractual indemnification are distinct depending on which of the aforementioned agreements are involved. On the one hand, the Owner's contract with ADL permitted indemnification in those instances only when the underlying loss was "cause[d] in whole or in part by *negligent* acts or omissions of the Contractor [ADL], Subcontractor [1-Seal], the Subcontractor's Sub-contractors [A1-M]," as more fully set forth in the margin.[10] On the other hand, the subcontract between ADL and 1-Seal, and in turn the sub-subcontract between 1-Seal and A1-M, each required only that the loss arose out of the contracted-for work (or the subcontracted-for work, as applicable) as the pre-condition to indemnification, instead of the occurrence of anyone's "negligent acts or omissions" as was the instance with the Owner's contract with ADL, as more fully set forth in the margin.[11]

Keeping in mind the aforementioned distinction between the types of indemnification triggers (meaning the "negligent acts or omissions" in the Owner's contract with ADL on the one hand, versus the performance of "Work" in ADL's subcontract with 1-Seal and, in turn, in 1-Seal's sub-subcontract with A1-M on the other hand), the Court holds that the Owner is *not*

---

[10] *See* Standard Form of Agreement Between Contractor [ADL] and Owner, dated as of May 22, 2018, Article 1.0 Indemnification, ¶ 1.1 (emphasis added) (NYSCEF Doc No. 195).

[11] *See* Subcontract Agreement Rider (Contractor/Subcontractor) between ADL and 1-Seal, dated July 1, 2018, ¶ 1 ("[T]he Subcontractor [A1-M] shall . . . indemnify . . . , at Subcontractor's sole expense, . . . *the Owner of the property* . . . from and against all liability or claimed liability . . . to any person(s) . . . arising out of or resulting from *the Work covered by this Contract Agreement* to the extent such Work was performed by or contracted through the Subcontractor" (emphasis added) (part of NYSCEF Doc No. 169). *See also* Subcontract Agreement Rider (Contractor/Subcontractor), between 1-Seal and A1-M, dated July 5, 2018, ¶ 1 ("[T]he Subcontractor [A1-M] shall . . . indemnify . . . , at Subcontractor's sole expense, . . . *the Owner of the property* . . . from and against all liability or claimed liability . . . to any person(s) . . . arising out of or resulting from *the Work covered by this Contract Agreement* to the extent such Work was performed by . . . the Subcontractor" (emphasis added) (NYSCEF Doc No. 298).

entitled to contractual indemnification *as against ADL* under the Owner's contract with ADL. There is an issue of fact as to whether the "negligent acts or omissions" (as required by the Owner's contract with ADL) occurred; or, stated otherwise, to what extent, if any, each of ADL, 1-Seal, and A1-M was at fault for plaintiff's accident. Accordingly, the initial portion of the remaining branch of the Owner's cross-motion which is for summary judgment on its third-party claim (and its cross-claim) for contractual indemnification *as against ADL is denied* (*see Spielmann v 170 Broadway NYC LP*, 187 AD3d 492, 494 [1st Dept 2020]).

Conversely, the Court holds that the Owner *is* entitled to contractual indemnification *as against 1-Seal and A1-M* under the respective subcontract and sub-subcontract. Although 1128 36th St LLC as an entity was not specifically named as an indemnitee in A1-M's subcontract with 1-Seal (or, in turn, in 1-Seal's sub-subcontract with A1-M), the subcontract (or the sub-subcontract, as applicable) expressly identified such entity as "the Owner of the property" as an indemnitee (*see Baginski v Queen Grand Realty, LLC*, 68 AD3d 905, 907-908 [2d Dept 2009] ["As the owner of the premises where the accident occurred, Queen (which was identified in the indemnity contract as the 'Owner') established its prima facie entitlement to summary judgment on its proposed contractual indemnification cause of action against (plaintiff's employer] based on the plain language of the indemnity provision."];[12] *see also Serpe v Northside Realty Mgt., LLC*, 189 AD3d 1492, 1494 [2d Dept 2020] ["Here, the indemnification clause in the lease between Northside and the City pre-dates the plaintiff's injuries, and expressly requires the City

---

[12] In *Baginski* (as is the instance here), the indemnification provision did not require "negligence" or "fault" as a pre-condition to indemnification. The *Baginski* indemnification provision required, in relevant part, that the employer "indemnify, and hold harmless, and defend the Owner" for "all injuries, claims, damages, losses and expenses of any kind or nature whatever, ... directly or indirectly arising out of or resulting from the performance of the Subcontractor's [*i.e.*, the employer's] Work under this Subcontract" (*Baginski*, 68 AD3d at 907). *See generally Rodrigues v N&S Bldg. Contrs., Inc.*, 5 NY3d 427, 433 (2005) ("So long as a written indemnification provision encompasses an agreement to indemnify the person asserting the indemnification claim for the type of loss suffered, it meets the requirements of the statute.").

[* 11]

to indemnify Northside for 'any accident (or) injury' to 'any person" on the premises "if caused by (the City.'"]). Accordingly, the other portions of the remaining branch of the Owner's cross-motion which is for summary judgment on its third-party claims for contractual indemnification *as against 1-Seal and A1-M are granted*.

The parties' remaining contentions have been considered and found to be either without merit or academic in light of the Court's determination.

Accordingly, it is hereby

ORDERED that in Seq. No. 10, plaintiff's motion for partial summary judgment on the issue of liability on his Labor Law § 240 (1) claim as against both the Owner and ADL is *granted*; and it is further

ORDERED that in Seq. No. 11, ADL's motion for summary judgment is *denied in its entirety*; and it is further

ORDERED that in Seq. No. 12, the Owner's cross-motion is *granted to the extent* that leave to serve its cross-motion is granted and, upon such leave, the Owner is granted contractual indemnification *as against both 1-Seal and A1-M*, and the remainder of the Owner's cross-motion is denied; and it is further

ORDERED that plaintiff's counsel is directed to electronically serve a copy of this decision and order with notice of entry on the other parties' respective counsel and to electronically file an affidavit of service thereof with the Kings County Clerk; and it is further

ORDERED that the parties are reminded of their next scheduled appearance on April 13, 2026 at 9:45 a.m. in JCP-1 for jury selection/trial.

This constitutes the decision and order of the Court.

E N T E R:

_____

**Hon. Anne J. Swern, J.S.C.**
**Dated: 3/2/2026**

[* 13]